## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALMONDNET, INC., and INTENT IQ, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC.,<br><br>Defendants. | Case No.   6:21-cv-00898<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AGAINST AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively, "Plaintiff" or "AlmondNet") makes the following allegations against Defendants Amazon.com, Inc.; Amazon.com Services LLC; and Amazon Web Services, Inc. (collectively, "Defendant" or "Amazon"):

## INTRODUCTION AND PARTIES

1.      This complaint arises from Defendant's unlawful infringement of the following United States patents owned by AlmondNet, each of which generally relate to novel internet / network based advertising systems and methods: United States Patent Nos. 8,677,398; 8,244,582; 8,775,249;  7,979,307;  8,959,146;  8,671,139;  9,508,089;  9,830,615;  7,822,639;  8,244,586 (collectively, the "Asserted Patents"). AlmondNet owns all right, title, and interest in each of the Asserted Patents to file this case.

2.      AlmondNet, Inc. is a is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business at 37-18 Northern Blvd Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC are collectively referred herein as "AlmondNet." Established in 1998, AlmondNet is an industry leader and pioneer in privacy-friendly, targeted advertising. AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and Intellectual Property covering numerous areas of the targeting landscape and ecosystem, including profile based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

3.      Defendant Amazon.com, Inc. is a Delaware corporation with a listed registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Amazon has a principal place of business at 410 Terry Ave. North, Seattle, Washington 98109-5210. Amazon may also be served with process via its registered agent Corporation Service Company 300 Deschutes Way SW Ste 208 MC-CSC1, Tumwater, WA, 98501.

4.      Defendant Amazon.com Services LLC (formerly "Amazon.com Services Inc." and referred to herein as "Amazon Services") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon Services is a wholly owned subsidiary of Amazon. Amazon Services is registered to do business in the State of Texas and may be served with process via its registered agent in Texas, Corporation Service Company dba CSC-Lawyers Incorporating Service Company at 211 7th Street, Suite 620, Austin, TX 78701-3218. Amazon Services may also be served via its

Delaware registered agent Corporation Service Company, 251 Little Falls Dr., Wilmington, Delaware 19808.

5.      Amazon Web Services, Inc. is a Delaware corporation with its principal place of business at 410 Terry Ave. North, Seattle, Washington 98109. Amazon Web Services, Inc. may be served through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. On information and belief, Amazon Web Services, Inc. is registered to do business in the State of Texas and has been since at least May 3, 2006. On information and belief, Amazon Web Services, LLC is a wholly-owned subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

8.      Venue is proper in this District. For example, Amazon has a regular and established place of business, including, e.g., at Amazon Tech Hub located at 11501 Alterra Parkway, Austin, TX.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,244,586

9.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

10.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,244,586, titled "computerized systems for added-revenue off-site targeted internet advertising," issued on August 14, 2012. ('586 patent). A true and correct copy of the '586 Patent is attached as Exhibit **..**

11.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '586 patent.

12.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

13.     Defendant's infringement has been and is willful. Defendant knew of the '586 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '586 patent.  Despite Defendant's knowledge of the '586 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '586 patent. Accordingly, Defendant is liable for willful infringement.

14.     Defendant also knowingly and intentionally induces infringement of claims of the '586 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '586 patent and the infringing nature of the Accused Products at least as early as when this Complaint was

filed and/or earlier, as set forth above. Despite this knowledge of the '586 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '586 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '586 patent, thereby specifically intending for and inducing its customers to infringe the '586 patent through the customers' normal and customary use of the Accused Products.

15.     Defendant has also infringed, and continue to infringe, claims of the '586 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '586 patent, in violation of 35 U.S.C. § 271(c).

16.     The Accused Products satisfy all claim limitations of claims of the '586 patent. A claim chart comparing an independent claim of the '586 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

17.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '586 patent pursuant to 35 U.S.C. § 271.

18.     As a result of Defendant's infringement of the '586 patent, AlmondNet is entitled

to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,244,582

19.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

20.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,244,582, titled "methods and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on August 14, 2012. ('582 patent). A true and correct copy of the '582 patent is attached as Exhibit **..**

21.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '582 patent.

22.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

23.     Defendant's infringement has been and is willful. Defendant knew of the '582 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '582 patent.  Despite Defendant's knowledge of the '582 patent, Defendant continued to infringe. In

doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '582 patent. Accordingly, Defendant is liable for willful infringement.

24.     Defendant also knowingly and intentionally induces infringement of claims of the '582 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '582 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '582 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '582 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '582 patent, thereby specifically intending for and inducing its customers to infringe the '582 patent through the customers' normal and customary use of the Accused Products.

25.     Defendant has also infringed, and continue to infringe, claims of the '582 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '582 patent, in violation of 35 U.S.C. § 271(c).

26.     The Accused Products satisfy all claim limitations of claims of the '582 patent. A claim chart comparing an independent claim of the '582 patent to a representative Accused

Product, is attached as Exhibit **.**, which is hereby incorporated by reference in its entirety.

27.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '582 patent pursuant to 35 U.S.C. § 271.

28.     As a result of Defendant's infringement of the '582 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

29.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

30.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,677,398, titled "system and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014. ('398 patent). A true and correct copy of the '398 Patent is attached as Exhibit **..**.

31.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '398 patent.

32.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

33.     Defendant's infringement has been and is willful. Defendant knew of the '398 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '398 patent.  Despite Defendant's knowledge of the '398 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '398 patent. Accordingly, Defendant is liable for willful infringement.

34.     Defendant also knowingly and intentionally induces infringement of claims of the '398 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '398 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '398 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '398 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '398 patent, thereby specifically intending for and inducing its customers to infringe the '398 patent through the customers' normal and customary use of the Accused Products.

35.     Defendant has also infringed, and continue to infringe, claims of the '398 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a

9

staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '398 patent, in violation of 35 U.S.C. § 271(c).

36.    The Accused Products satisfy all claim limitations of claims of the '398 patent. A claim chart comparing an independent claim of the '398 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

37.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '398 patent pursuant to 35 U.S.C. § 271.

38.    As a result of Defendant's infringement of the '398 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

39.    Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '398 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 8,775,249

40.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

41.    AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,775,249, titled "method, computer system, and stored program for accumulating descriptive profile data along

with source information for use in targeting third-party advertisements," issued on July 8, 2014. ('249 patent). A true and correct copy of the '249 patent is attached as Exhibit **.**

42.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '249 patent.

43.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

44.     Defendant's infringement has been and is willful. Defendant knew of the '249 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '249 patent.  Despite Defendant's knowledge of the '249 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '249 patent. Accordingly, Defendant is liable for willful infringement.

45.     Defendant also knowingly and intentionally induces infringement of claims of the '249 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '249 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '249 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '249 patent. Defendant does so knowing and intending that its customers

and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '249 patent, thereby specifically intending for and inducing its customers to infringe the '249 patent through the customers' normal and customary use of the Accused Products.

46.     Defendant has also infringed, and continue to infringe, claims of the '249 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '249 patent, in violation of 35 U.S.C. § 271(c).

47.     The Accused Products satisfy all claim limitations of claims of the '249 patent. A claim chart comparing an independent claim of the '249 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

48.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '249 patent pursuant to 35 U.S.C. § 271.

49.     As a result of Defendant's infringement of the '249 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## **COUNT V**

12

## INFRINGEMENT OF U.S. PATENT NO. 7,979,307

50.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

51.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 7,979,307, titled "method and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on July 12, 2011 ('307 patent). A true and correct copy of the '307 patent is attached as Exhibit **..**

52.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '307 patent.

53.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

54.     Defendant's infringement has been and is willful. Defendant knew of the '307 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '307 patent.  Despite Defendant's knowledge of the '307 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '307 patent. Accordingly, Defendant is liable for willful infringement.

55.     Defendant also knowingly and intentionally induces infringement of claims of the '307 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '307 patent

and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '307 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '307 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '307 patent, thereby specifically intending for and inducing its customers to infringe the '307 patent through the customers' normal and customary use of the Accused Products.

56.     Defendant has also infringed, and continue to infringe, claims of the '307 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '307 patent, in violation of 35 U.S.C. § 271(c).

57.     The Accused Products satisfy all claim limitations of claims of the '307 patent. A claim chart comparing an independent claim of the '307 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

58.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '307 patent pursuant to 35 U.S.C. § 271.

59.     As a result of Defendant's infringement of the '307 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

60.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '307 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 8,959,146

61.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

62.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,959,146, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on February 17, 2015 ('146 patent). A true and correct copy of the '146 patent is attached as Exhibit **..**

63.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '146 patent.

64.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

65.     Defendant's infringement has been and is willful. Defendant knew of the '146 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '146 patent.  Despite Defendant's knowledge of the '146 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '146 patent. Accordingly, Defendant is liable for willful infringement.

66.     Defendant also knowingly and intentionally induces infringement of claims of the '146 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '146 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '146 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '146 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '146 patent, thereby specifically intending for and inducing its customers to infringe the '146 patent through the customers' normal and customary use of the Accused Products.

67.     Defendant has also infringed, and continue to infringe, claims of the '146 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a

staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '146 patent, in violation of 35 U.S.C. § 271(c).

68.     The Accused Products satisfy all claim limitations of claims of the '146 patent. A claim chart comparing an independent claim of the '146 patent to a representative Accused Product, is attached as Exhibit __, which is hereby incorporated by reference in its entirety.

69.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '146 patent pursuant to 35 U.S.C. § 271.

70.     As a result of Defendant's infringement of the '146 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

71.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '146 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VII

## INFRINGEMENT OF U.S. PATENT NO. 8,671,139

72.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

73.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,671,139, titled "media properties selection method and system based on expected profit from profile-based ad

delivery," issued on March 11, 2014 ('139 patent). A true and correct copy of the '139 patent is attached as Exhibit **..**

74.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '139 patent.

75.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

76.     Defendant's infringement has been and is willful. Defendant knew of the '139 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '139 patent.  Despite Defendant's knowledge of the '139 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '139 patent. Accordingly, Defendant is liable for willful infringement.

77.     Defendant also knowingly and intentionally induces infringement of claims of the '139 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '139 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '139 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '139 patent. Defendant does so knowing and intending that its customers

and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '139 patent, thereby specifically intending for and inducing its customers to infringe the '139 patent through the customers' normal and customary use of the Accused Products.

78.     Defendant has also infringed, and continue to infringe, claims of the '139 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '139 patent, in violation of 35 U.S.C. § 271(c).

79.     The Accused Products satisfy all claim limitations of claims of the '139 patent. A claim chart comparing an independent claim of the '139 patent to a representative Accused Product, is attached as Exhibit __, which is hereby incorporated by reference in its entirety.

80.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '139 patent pursuant to 35 U.S.C. § 271.

81.     As a result of Defendant's infringement of the '139 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

82.     Defendant's infringing activities have injured and will continue to injure

AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '139 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VIII

## INFRINGEMENT OF U.S. PATENT NO. 7,822,639

83.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

84.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 7,822,639, titled "added-revenue off-site targeted internet advertising," issued on October 26, 2010 ('639 patent). A true and correct copy of the '639 Patent is attached as Exhibit **..**

85.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '639 patent.

86.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

87.     Defendant's infringement has been and is willful. Defendant knew of the '639 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '639 patent.  Despite Defendant's knowledge of the '639 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of

the '639 patent. Accordingly, Defendant is liable for willful infringement.

88.     Defendant also knowingly and intentionally induces infringement of claims of the '639 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '639 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '639 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '639 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '639 patent, thereby specifically intending for and inducing its customers to infringe the '639 patent through the customers' normal and customary use of the Accused Products.

89.     Defendant has also infringed, and continue to infringe, claims of the '639 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '639 patent, in violation of 35 U.S.C. § 271(c).

90.     The Accused Products satisfy all claim limitations of claims of the '639 patent. A claim chart comparing an independent claim of the '639 patent to a representative Accused Product, is attached as Exhibit _, which is hereby incorporated by reference in its entirety.

91.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '639 patent pursuant to 35 U.S.C. § 271.

92.     As a result of Defendant's infringement of the '639 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

93.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '639 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

<u>**COUNT IX**</u>

<u>**INFRINGEMENT OF U.S. PATENT NO. 9,508,089**</u>

94.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

95.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 9,508,089, titled "method and systems for directing profile-based electronic advertisements via an intermediary ad network to visitors who later visit media properties," issued on November 29, 2016 ('089 patent). A true and correct copy of the '089 patent is attached as Exhibit **..**

96.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '089 patent.

97.     The infringement of the Asserted Patents is also attributable to Defendant.

Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

98.     Defendant's infringement has been and is willful. Defendant knew of the '089 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '089 patent.  Despite Defendant's knowledge of the '089 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '089 patent. Accordingly, Defendant is liable for willful infringement.

99.     Defendant also knowingly and intentionally induces infringement of claims of the '089 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '089 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '089 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '089 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '089 patent, thereby specifically intending for and inducing its customers to infringe the '089 patent through the customers' normal and customary use of the Accused Products.

100.     Defendant has also infringed, and continue to infringe, claims of the '089 patent by offering to commercially distribute, commercially distributing, making, and/or importing the

Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '089 patent, in violation of 35 U.S.C. § 271(c).

101.    The Accused Products satisfy all claim limitations of claims of the '089 patent. A claim chart comparing an independent claim of the '089 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

102.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '089 patent pursuant to 35 U.S.C. § 271.

103.    As a result of Defendant's infringement of the '089 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

104.    Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '089 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT X

## INFRINGEMENT OF U.S. PATENT NO. 9,830,615

105.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if

fully set forth herein.

106.   AlmondNet owns all rights, title, and interest in U.S. Patent No. 9,830,615, titled "electronic ad direction through a computer system controlling ad space on multiple media properties based on a viewer's previous website visit," issued on November 28, 2017 ('615 patent). A true and correct copy of the '615 patent is attached as Exhibit **..**

107.   On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Amazon's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '615 patent.

108.   The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

109.   Defendant's infringement has been and is willful. Defendant knew of the '615 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '615 patent.  Despite Defendant's knowledge of the '615 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '615 patent. Accordingly, Defendant is liable for willful infringement.

110.   Defendant also knowingly and intentionally induces infringement of claims of the '615 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '615 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '615 patent, Defendant

continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '615 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '615 patent, thereby specifically intending for and inducing its customers to infringe the '615 patent through the customers' normal and customary use of the Accused Products.

111.    Defendant has also infringed, and continue to infringe, claims of the '615 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '615 patent, in violation of 35 U.S.C. § 271(c).

112.    The Accused Products satisfy all claim limitations of claims of the '615 patent. A claim chart comparing an independent claim of the '615 patent to a representative Accused Product, is attached as Exhibit ., which is hereby incorporated by reference in its entirety.

113.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '615 patent pursuant to 35 U.S.C. § 271.

114.    As a result of Defendant's infringement of the '615 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in

no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

115.    Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '615 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## **PRAYER FOR RELIEF**

WHEREFORE, AlmondNet respectfully requests that this Court enter:

a.    A judgment in favor of AlmondNet that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b.    A judgment in favor of Plaintiff that Defendant has willfully infringed the Asserted Patents;

c.    A permanent injunction prohibiting Defendant from further acts of infringement of each of the '398, '146, '139, '639, '089, and '615 patents;

d.    A judgment and order requiring Defendant to pay AlmondNet its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each of the Asserted Patents;

e.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to AlmondNet, including without limitation, pre-judgment and post-judgment interest;

f.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to AlmondNet its reasonable attorneys' fees against Defendant; and

27

g.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

AlmondNet, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Dated: August 27, 2021                            Respectfully submitted,

                                                  */s/ Reza Mirzaie*

                                                  Reza Mirzaie
                                                  Marc A. Fenster
                                                  James A. Milkey
                                                  **RUSS AUGUST & KABAT**
                                                  12424 Wilshire Boulevard, 12th Floor
                                                  Los Angeles, CA 90025
                                                  Telephone: (310) 826-7474

                                                  *Attorneys for Plaintiff AlmondNet, Inc.*