PUBLIC VERSION

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALMONDNET, INC., | Case No. 6:21-cv-00898-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; and AMAZON WEB SERVICES, INC., | ███████████████ |
| Defendants. | |

## PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. HENRY HOUH AND TO STRIKE PORTIONS OF HIS EXPERT REPORT

# PUBLIC VERSION

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     THE COURT SHOULD EXCLUDE UNDER *DAUBERT* OR STRIKE HOUH'S
OPINIONS CONCERNING NON-INFRINGING ALTERNATIVES BECAUSE HE FAILED
TO ASSUME INFRINGEMENT IN HIS ANALYSIS ................................................ 1

III.    THE COURT SHOULD EXCLUDE UNDER *DAUBERT* AND STRIKE HOUH'S
OPINIONS THAT ARE INCONSISTENT WITH THE COURT'S *MARKMAN* ORDER......... 4

    A. Houh Reads a "Saturation" Limitation into the Claims of the '639 and '586 Patents,
Despite the Court Expressly Holding to the Contrary ........................................ 5

    B. Houh Insists that Sale and Payment for Advertisements Must Occur in the Past for the
'639 and '586 Patents, but the Court Has Rejected that Argument.................................. 6

IV.     THE COURT SHOULD LIKEWISE EXCLUDE UNDER *DAUBERT* AND STRIKE
HOUH'S NEW AND BELATED CLAIM CONSTRUCTION THEORIES THAT ARE
UNSUPPORTED BY THE INTRINSIC RECORD ................................................... 7

    A. Houh's Interpretation of "first Internet site" in the Claims of the '639 and '586
Patents Is in Direct Contradiction with the File History .................................... 8

    B. Houh's Interpretation of "directing" in Claim Element 37(a) of the '139 Patent Is in
Direct Contradiction with the File History ........................................................ 8

    C. Houh's Purported Requirements that the "first price" in the Claims of the '639 and
'586 Patents Is Predetermined, Fixed, the Same for Multiple Visitors, and Also Must Be
a Publisher Price, Improperly Imports Limitations from Examples in the Specification . 9

    D. Houh's Purported Requirement that the "authorizing" of Claim Element 37(b) of the
'139 Patent Must Occur Prior to When an "electronic visitor visits a second media
property" Improperly Imports a Limitation from Examples in the Specification and Is
Inconsistent with the Claim Language ............................................................ 11

    E. Houh's Purported Requirement that the "condition" of Claim 37 of the '139 Patent
Must be Predetermined Improperly Imports a Limitation from Examples in the
Specification ................................................................................................... 12

    F. Houh's Purported Requirement that the Claims of the '139 Patent Are Directed to
"Expected Profit" Calculations Improperly Imports a Limitation from an Example in the
Specification ................................................................................................... 12

    G. Houh's Purported Requirement that the "third party server computer controlling
advertising space" of Claim Element 37(a) of the '139 Patent Must Be the Same for
"each of a multitude of electronic visitors" Is Inconsistent with the Claim Language ... 13

i

**PUBLIC VERSION**

V.    THE COURT SHOULD STRIKE HOUH'S OPINIONS CONCERNING THE
PREAMBLES OF THE ASSERTED CLAIMS, AS HE HAS NOT OPINED THEY ARE
LIMITING, NOR HAS THE COURT FOUND THAT THEY ARE ........................................ 14

VI.    THE COURT SHOULD STRIKE HOUH'S OPINIONS THAT RELY ON
INFORMATION THAT AMAZON WITHHELD DURING FACT DISCOVERY ................. 15

VII.    THE COURT SHOULD EXCLUDE UNDER *DAUBERT* OR STRIKE HOUH'S
OPINIONS BASED ON BALD ASSERTIONS UNSUPPORTED BY ANY EVIDENCE OR
REASONING .......................................................................................................................... 18

# PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    No. 2:15-cv-1047, 2016 WL 11750179 (E.D. Tex. Nov. 30, 2016) ...................................... 18

*Continental Circuits LLC v. Intel Corp.*,
    915 F.3d 788 (Fed. Cir. 2019) .............................................................................................. 11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................................... 1, 4, 7, 19

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) .............................................................................................. 4

*Glaukos Corp. v. Ivantis, Inc.*,
    No. 18-cv-620, 2020 WL 10501852 (C.D. Cal. July 23, 2020) ............................................. 1

*Gree, Inc. v. Supercell Oy*,
    No. 2:19-cv-70, 2020 WL 4288356 (E.D. Tex. July 27, 2020) ...................................... 15, 17

*Kaist IP US LLC v. Samsung Elecs. Co.*,
    2:16-cv-1314, 2018 WL 2411772 (E.D. Tex. May 29, 2018)................................................. 7

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) ............................................................................................ 19

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) .............................................................................................. 4

*Maxell, Ltd. v. Apple Inc.*,
    No. 5:19-cv-36, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ......................................... 6, 7

*Navico Inc. v. Garmin Int'l, Inc.*,
    No. 2:16-cv-190, 2017 WL 2868961 (E.D. Tex. July 4, 2017) ............................................ 18

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
    30 4th 1339 (Fed. Cir. 2002) ............................................................................................... 19

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (2008) ............................................................................................................. 7

*OneSubSea IP UK Ltd. v. FMC Techs., Inc.*,
    No. 4-16-0051, 2020 WL 7263266 (S.D. Tex. Dec. 10, 2020)............................................... 4

*Prism Techs. LLC v. Sprint Spectrum LP*,
    849 F.3d 1360 (Fed. Cir. 2017) .............................................................................................. 1

## PUBLIC VERSION

*Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*,
    725 F.3d 1377 (Fed. Cir. 2013) ............................................................................... 16

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................... 10, 12, 13

*U.S. Auto. Assoc. v. PNC Bank NA*,
    No. 2:20-cv-00319, 2022 WL 1453204 (E.D. Tex. Apr. 17, 2022) ......................... 4

*U.S. Auto. Assoc. v. PNC Bank NA*,
    No. 2:20-cv-00319, 2022 WL 1463984 (E.D. Tex. May 6, 2022) ........................... 4

*Varta Microbattery GmbH v. Audio P'Ship LLC*,
    No. 2:21-cv-400, 2023 WL 5192986 (E.D. Tex. Aug. 11, 2023) ............................ 4

**Rules**

Fed. R. Civ. P. 26 ............................................................................................... 15, 16

Fed. R. Civ. P. 37(c) ........................................................................................... 15, 19

Fed. R. Evid. 702 .......................................................................................... 1, 4, 7, 19

PUBLIC VERSION

## I.    INTRODUCTION

Amazon's expert Dr. Henry Houh's rebuttal non-infringement report contains opinions (1) concerning alleged "non-infringing alternatives" in which he improperly does not assume that the Accused Products infringe the asserted patents, (2) that are inconsistent with this Court's *Markman* order, (3) that are rooted in belated claim construction proposals that are inconsistent with and unsupported by the intrinsic record, (4) that are rooted in preambles that no one contends are limiting, (5) that are based on information that Amazon withheld during fact discovery, and (6) that are based on nothing more than conclusory statements. AlmondNet respectfully requests that he be precluded from offering these six categories of opinions at trial for the reasons detailed below. At a high level, each of these categories of unreliable opinions would do nothing but to inject irrelevant issues into the case, confusing the jury and bringing undue prejudice to AlmondNet.

## II.    THE COURT SHOULD EXCLUDE UNDER *DAUBERT* OR STRIKE HOUH'S OPINIONS CONCERNING NON-INFRINGING ALTERNATIVES BECAUSE HE FAILED TO ASSUME INFRINGEMENT IN HIS ANALYSIS

Rule 702 requires judges to act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993). It is black letter law that "the hypothetical-negotiation rubric for the assessment of reasonable royalty damages **assumes that the asserted patents are** valid and **infringed**."[1] *Prism Techs. LLC v. Sprint Spectrum LP*, 849 F.3d 1360, 1369 (Fed. Cir. 2017). Consistent with that principle, any non-infringing alternatives proposed by a defendant in a patent case must, in fact, be non-infringing. *See, e.g.*, *Glaukos Corp. v. Ivantis, Inc.*, No. 18-cv-620, 2020 WL 10501852, at *11-12 (C.D. Cal. July 23, 2020) (excluding under *Daubert* opinions concerning an alleged non-infringing alternative because it infringed asserted claims).

---

[1] All emphases added unless otherwise noted.

**PUBLIC VERSION**

But Houh did not assume that the Accused Products infringe when offering opinions on a proposed "alternative" in his rebuttal report. Rather, he proposed a minor change to one of the Accused Products, and that resulting "alternative" would still infringe. Even Amazon's damages expert Mr. Christopher Bakewell agrees such an approach is improper, and that Houh must assume liability under AlmondNet and its expert's theory of infringement when considering proposed alternatives: ████████████████████████████████████████

████████████████████████████████ Ex. 19 35:23-43:1; *see also id.* 77:7-16 ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████). But as detailed below, Houh, in fact, did not do so.

In essence, Houh proposes an "alternative system" ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See* Ex. 1 ¶¶355, 359, 360.

Fatally for Houh, the only "non-infringement" arguments he offers for his proposed "alternative" are *the same* arguments that he offers for the Accused Products. Houh summarizes his reasons for why his proposed "alternative" does not infringe as follows:

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

*Id.* ¶359; *see also id.* ¶360. And looking to his more specific analyses of claim elements of the

PUBLIC VERSION

asserted patents, Houh alleges that the proposed "alternative" does not perform the "authorizing" step of claim element 37 of the '139 patent because "███████████████ ████████████████████████████████████████████." *Id.* ¶356 (second emphasis in original). But Houh presents this same "ultimate decision" reason as to why the (unmodified) Accused Products do not meet this claim element. *See id.* ¶¶206, 210 (asserting that the Accused Products do not perform the "authorizing" step of claim element 37 because ███████ ████████████████████████████████," and noting that "██████████ ██████████████████████████████  █████████████████████████ █████████████████")*; see also id.* ¶196.

Similarly, Houh claims that the proposed "alternative" does not perform the "facilitating" or "directing" steps of the claims of the '639 and '586 patents because ███████ ██████████████████████████." *Id.* ¶357. But again, he presents the same reasoning as to why the Accused Products do not meet these elements. *See id.* ¶245 (asserting that the Accused Products do not perform the "facilitating delivery" step of the '639 and '586 patents "████████████████████████████████████████████████████ ██████████████████████████████████████████")*; see also id.* ¶302.

And finally, Houh claims that the proposed "alternative" "does not 'cause' the first or second [Internet] site to 'receive revenue' as a result of ███████████ ads, as the claims of the '586 and '639 patents require, because ██████████████████████████████ ████████████████████████████████. *Id.* ¶357. And again, he presents the same reasoning as to why the Accused Products do not meet this limitation. *See id.* ¶261 ████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████,

PUBLIC VERSION

█████████████████████████████████████████████████████ ….");

*see also id.* ¶265.

Put simply, Houh's opinions regarding alleged non-infringing alternatives assume his non-infringement arguments with respect to the (unmodified) Accused Products are correct, not that Koskinen's theories are correct. Houh thus assumes that the unmodified Accused Products do not infringe, failing to assume liability as required in the context of the hypothetical negotiation and the associated "non-infringing alternatives" analysis.

Because Houh did not assume infringement when formulating his proposed "non-infringing alternative," his opinions on this point should be excluded under Rules 702 and *Daubert* because they are the product of unreliable principles and methods. The portions of his expert report concerning this proposed non-infringing alternative (paragraphs 354-360) should be stricken for these reasons, and because AlmondNet would suffer undue prejudice, as Houh's legally unsupportable opinions would do nothing but confuse both the jury and the issues.

## III. THE COURT SHOULD EXCLUDE UNDER *DAUBERT* AND STRIKE HOUH'S OPINIONS THAT ARE INCONSISTENT WITH THE COURT'S *MARKMAN* ORDER

"[E]xpert testimony inconsistent with the court's claim construction should be excluded because it is unreliable and unhelpful to the finder of fact." *Varta Microbattery GmbH v. Audio P'Ship LLC*, No. 2:21-cv-400, 2023 WL 5192986, at *3 (E.D. Tex. Aug. 11, 2023) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009)); *see OneSubSea IP UK Ltd. v. FMC Techs., Inc.*, No. 4-16-0051, 2020 WL 7263266, at *5-6 (S.D. Tex. Dec. 10, 2020) (excluding expert testimony as inconsistent with *Markman* order); *U.S. Auto. Assoc. v. PNC Bank NA*, No. 2:20-cv-00319, 2022 WL 1453204, at *7-8 (E.D. Tex. Apr. 17, 2022), *R&R adopted*, 2022 WL 1463984 (E.D. Tex. May 6, 2022) (same); *see also Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1229 n.2 (Fed. Cir. 2006) (affirming exclusion of expert

## PUBLIC VERSION

testimony based on an impermissible claim construction).

### A. Houh Reads a "Saturation" Limitation into the Claims of the '639 and '586 Patents, Despite the Court Expressly Holding to the Contrary

The Court could not have been clearer in its *Markman* order: "[W]ith respect to Amazon's argument that the claimed invention is premised on the situation [of] whether the first Internet site becomes 'saturated' with advertisements, the Court disagrees. ***The claims do not require that the first Internet site is saturated with advertisements***." Dkt. No. 113, 14. Despite this clear holding, Houh opines otherwise in his rebuttal report. For example, he alleges AlmondNet's expert Koskinen ███████████████████████████████████████ ████████████████████████████████████ Ex. 1 ¶238; *see id.* ¶56 ████████████ ███████████████████████████; *see also id.* ¶¶53, 55, 59, 252, 272, 304.

At his deposition, Houh appeared to confirm his "saturation" opinions: "█████████ ████████████████████████████████████████████████████████████████████████ ████████████████████" Ex. 2 51:18-52:19; *see also id.* 36:20-44:9, 62:16-18, 80:10-89:19; Ex. 3 235:4-237:10. He even went as far to claim that the Court has not ██████████████ ██████████████████ and that he need not follow the holdings in the Court's *Markman* order because, in his view, only "part of the analysis is considering the Court's analysis." Ex. 2 93:18-94:3; 100:6-18; *see also id.* 91:14-109:15, 111:13-20. As further confirmation that Houh's opinions fly in the face of the *Markman* order, Amazon's prior art invalidity expert, Dr. Ward Hanson, does not impose a "saturation" requirement on the claims: ██████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████ Ex. 4 34:6-25; *see also id.* 115:18-21.

AlmondNet respectfully requests the Court exclude Houh's "saturation" opinions, and strike paragraphs 53, 55, 56, 59, 238, 252, 272, 304, and 310 of his rebuttal report, as

## PUBLIC VERSION

inconsistent with the *Markman* order. *See, e.g.*, *Maxell, Ltd. v. Apple Inc.*, No. 5:19-cv-36, 2020 WL 8269548, at *20 (E.D. Tex. Nov. 11, 2020) (holding that "all experts are prohibited from providing any opinions based on an interpretation of the Court's construction that is the equivalent of any construction that the Court previously considered and expressly rejected").

    **B.**    **Houh Insists that Sale and Payment for Advertisements Must Occur in the Past for the '639 and '586 Patents, but the Court Has Rejected that Argument**

Houh also applies a rejected interpretation to the "sold" and "has paid" terms of the '639 and '586 patents. In its *Markman* order, the Court rejected Amazon's contention that "the advertisement must have been previously sold," and further concluded that payment need not "occur <u>prior to</u> the placement of the advertisement at the second Internet site. By contrast, payment could be made, for example, at the end of the month." Dkt. No. 113 at 14-15 (emphasis in original).



*See, e.g.*, Ex. 1 ¶254

; *id.* ¶¶304, 313 *see also id.* ¶¶69, 75, 246, 247, 255, 256, 271, 273, 276, 277, 305, 314, 315, 321.

*See id.* ¶¶257, 316.

Ex. 3 205:14-206:4; *see also id.* 203:2-205:13, 211:17-24.

AlmondNet respectfully requests the Court exclude Houh's opinions that payment or sale must have occurred *prior to* the placement of the advertisement, and strike paragraphs 69, 75, 246, 247, 254-257, 271, 273, 276, 277, 304, 305, 313-316, and 321 of his rebuttal report, as inconsistent with the *Markman* order. *See, e.g., Maxell*, 2020 WL 8269548, at *20.

**PUBLIC VERSION**

**IV.    THE COURT SHOULD LIKEWISE EXCLUDE UNDER *DAUBERT* AND STRIKE HOUH'S NEW AND BELATED CLAIM CONSTRUCTION THEORIES THAT ARE UNSUPPORTED BY THE INTRINSIC RECORD**

Houh offers numerous opinions in his rebuttal report that are nothing more than belated claim construction theories. To be clear, the opinions addressed in this brief are not fact-based arguments about what falls within the scope of the claim language, but are rather pure construction-based, legal arguments that cannot be permitted to go to a jury under controlling Federal Circuit law. *See, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-63 (2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

Resolving each of these issues is straightforward here. Even setting aside these construction-based theories are being asserted for the first time long after that contemplated by the Scheduling Order (Dkt. Nos. 113, 120), each is unsupported by the intrinsic record. The Court should thus exclude each of these opinions under Rule 702 and *Daubert* as unreliable and irrelevant to any issue in the case. *See, e.g.*, *Kaist IP US LLC v. Samsung Elecs. Co.*, 2:16-cv-1314, 2018 WL 2411772, at *1-2 (E.D. Tex. May 29, 2018) (excluding belated construction raised for the first time in a rebuttal report because it was inconsistent with the specification). The corresponding portions of Houh's report should also be stricken, as AlmondNet would be unduly prejudiced if Amazon could present these unsupportable, legal arguments to the jury. *See, e.g.*, *Maxell*, 2020 WL 8269548, at *21-23 (striking portions of expert reports that advanced new construction theories unsupported by the intrinsic record).

In the alternative, if the Court feels that more briefing would be advantageous to resolve any of these issues, AlmondNet moves the Court for additional claim construction, consistent with *O2 Micro* and its progeny.

PUBLIC VERSION

**A.    Houh's Interpretation of "first Internet site" in the Claims of the '639 and '586 Patents Is in Direct Contradiction with the File History**

Houh criticizes AlmondNet's expert because ████████████████

████████████████████████████████████████████

████████████████ *Ex. 1* ¶242 (emphasis in original); *see id.* ¶¶279, 322, 344 ██

████████████████████████████████████████████

████████████████████████████████████████ ); ¶54 (

████████████████████████████████████████████

████████████████ ); *see also id.* ¶285. Houh's opinions are in direct contradiction with the

file history of the '639 patent (which is the grandparent of the '586 patent):

> **"[S]ites"** in the claims [] refer[] to **collections of one or more Internet pages operated for the benefit of a particular person or entity**, who or which is sometimes references as a "proprietor." The term **"site" is not being used to refer to a particular URL, domain name, or IP address**; after all, for example, a given site may have multiple URLs, domain names, or IP addresses.

Ex. 9, 3377 (second underlining in original). Put simply, contrary to Houh's opinions, the file

history makes clear that "site" in the claims can refer to a collection of Internet pages and

properties operated for the benefit of the same proprietor, including those with different domain

names. The Court should exclude Houh's "sites" opinion, and strike paragraphs 54, 242, 279,

285, 322, and 344 of his rebuttal report, because they present a belated claim construction

theory that is inconsistent with the intrinsic record.

**B.    Houh's Interpretation of "directing" in Claim Element 37(a) of the '139 Patent Is in Direct Contradiction with the File History**

Claim element 37(a) in part requires "**directing**, to a third-party server computer …

indicia of a condition for display of an advertisement." Ex. 5 cl. 37. Houh claims that the

Accused Products do not direct "indicia of a condition" (which AlmondNet maps to the bid

amount of a real-time bid for an advertisement) to a "third-party server computer" (which

8

**PUBLIC VERSION**

AlmondNet maps to a publisher's ad server) because a component of the Accused Products

"███████████████████████████████████████████████████," but rather

███████████████████████████████████████████████████████

███████████████████████████████████████████████████. Ex. 1 ¶¶197;

*see also id.* ¶199, 207; Ex. 3 134:21-135:18, 140:19-143:22. But Houh's requirement that the

███████████████████████████████████████████████████████ is

again refuted by the file history. The applicant made clear that "directing" in this claim "was

intended to cover instances of **both *direct* communication** from the computer system to the

server computer controlling ad space and of ***indirect* communication**." Ex. 8, 156 (italics in

original). The Court should exclude Houh's "directly directing" opinion, and strike paragraphs

197, 199, and 207 of his rebuttal report, because they present a belated claim construction

theory that is inconsistent with the intrinsic record.

> **C.    Houh's Purported Requirements that the "first price" in the Claims of the '639 and '586 Patents Is Predetermined, Fixed, the Same for Multiple Visitors, and Also Must Be a Publisher Price, Improperly Imports Limitations from Examples in the Specification**

Houh opines that the claimed "first price" must be (1) predetermined/pre-arranged,

fixed, and the same for all or multiple visitors, as well as (2) what a publisher or publishers are

paid for the advertisement. On the first point, Houh asserts that █████████████████

███████████████████████████████████████████████████████

███████████ Ex. 1 ¶256; *see id.* ¶263 (████████████████████████

███████████████████████████████████████████████████████);

*see also id.* ¶¶69, 246, 247, 255, 257, 258, 271-273, 276, 277, 304, 305, 315, 317. █████████

███████████████████████████████████████████████████████

███████ *See, e.g.*, Ex. 1 ¶¶246, 272, 273, 304 (████████████████████);

9

*id.* ¶¶258, 317 (

█████████████████████████████████████████). He does not to point to any

lexicography or disclaimer to justify narrowing "first price" to require it to be predetermined

and fixed, or to require the "first price" to be the same for all or multiple visitors. *See Thorner v.*

*Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

On the second point, Houh alleges ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 1 ¶¶258; *see also id.* ¶¶274, 278, 317, 320,

324; Ex. 3 209:14-213:12. He does not allege that there is any lexicography or disclaimer that

supports such a limitation. *See Thorner*, 699 F.3d at 1365. Moreover, this interpretation does

not make sense in the context of the claim language itself. For example, claim element 24(f) of

the '639 patent requires that "the proprietor of the first Internet site retains at least part of the

***difference between the first price and the revenue received by the proprietor of the second***

***Internet site***." Ex. 6 cl. 24. If the "first price" is equal to what the "proprietor of the second

Internet site" charges, logic dictates that claim element 24(f) could never be met, as there would

be nothing left for "the proprietor of the first Internet site" to "retain[]." Indeed, Hanson did not

impose Houh's proposed requirement in his analysis. *See* Ex. 4 115:22-116:10.

Relatedly, Houh's opinions regarding limitation 24(f) of the '639 patent (and limitation

11(f) of the '586 patent) ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. Ex.

1 ¶¶281, 324. Again, Dr. Houh provides no support for such a claim requirement, and certainly

nothing arising to lexicography or disclaimer. *See Thorner*, 699 F.3d at 1365. Indeed, as noted

above, to the extent the "first price" is the publisher price charged by the proprietor of the

second site as argued by Houh, limitation 24(f) would make no sense because there would be **_no_** difference between the first price and the revenue retained by the proprietor of the second site.

The Court should exclude Houh's new "first price" construction, and strike paragraphs 69, 246, 247, 255-258, 263, 271-274, 276-278, 281, 304, 305, 315, 317, 320, and 324 of his rebuttal report, because they present belated claim construction theories that are unsupported by and inconsistent with the intrinsic record.

**D.    Houh's Purported Requirement that the "authorizing" of Claim Element 37(b) of the '139 Patent Must Occur Prior to When an "electronic visitor visits a second media property" Improperly Imports a Limitation from Examples in the Specification and Is Inconsistent with the Claim Language**

Houh also opines that



Ex. 1 ¶208 (quoting Ex. 5 cl. 37) (second emphasis in original); *see also id.* ¶¶69, 252, 310. On its face, the claim language does not impose a requirement that the authorization be for a ***future event*** as opposed to a ***current event***. Ex. 5 cl. 37. The only support Houh offers for his strained construction are examples from the specification. *See, e.g.* Ex. 1 ¶208. And at his deposition, Houh

Ex. 3 180:7-183:13. It is of course improper to read a limitation found in exemplary embodiments into the claims. *See, e.g.*, *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797-800 (Fed. Cir. 2019). Further supporting that Houh's narrowing claim interpretation is wrong is that Hanson disagreed that                    . Ex. 4 189:13-193:5. The Court should exclude Houh's

11

construction, and strike paragraphs 69, 208, 252, and 310 of his rebuttal report, because they present a belated claim construction theory unsupported by the intrinsic record.

     **E.**      **Houh's Purported Requirement that the "condition" of Claim 37 of the '139 Patent Must be Predetermined Improperly Imports a Limitation from Examples in the Specification**

Houh alleges ████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 1 ¶202. In support of this argument, he cites ███████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ (*id.* (quoting Ex. 5 10:24-29)) ██████████

████████████████████████████ (*id.* (citing Ex. 5 Fig. 1 and associated text)). Again, he points to only exemplary embodiments and nothing that rises to the level of lexicography or disclaimer. *See Thorner*, 699 F.3d at 1365. The Court should exclude Houh's ████

██████████████████████, and strike paragraph 202 of his rebuttal report, because they present a belated claim construction theory unsupported by the intrinsic record.

     **F.**      **Houh's Purported Requirement that the Claims of the '139 Patent Are Directed to "Expected Profit" Calculations Improperly Imports a Limitation from an Example in the Specification**

At his deposition, Houh made clear that he intends to testify at trial that the asserted claims of the '139 patent, including claim 37, require advertisement placement based on "expected profit." Ex. 2 188:1-190:25 ("████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ He offers similar opinions in his rebuttal report. Ex. 1 ¶51 ██████████

████████████████████████████████████████████████████████

██████████████████████████; *see also id.* ¶¶59, 69. But as Dr. Houh recognized at his

deposition, ██████████████████████████████████████████ Ex. 2

189:6-23; *see* Ex. 5 cl. 37. And again, the only support he has for importing this limitation into

the claims is an exemplary embodiment in the specification, and nothing that amounts to

lexicography or disclaimer. *See, e.g.*, Ex. 1 ¶69 (citing Ex. 5 Figs. 1 & 2); *see also Thorner*, 699

F.3d at 1365.

That "expected profit" is not required by claim 37 is further confirmed by the dependent

claims, which make clear that the condition for display of an advertisement may (or

alternatively, may not be) based on factors related to expected profit. For example, the concept

of expected profit, while not appearing in independent claim 37, appears in dependent claim 38,

which recites that "the condition" for display of an ad is "that a price charged … is less than

a … price that an advertiser is willing to pay." Ex. 5 cl. 38; *see also id.* 8:9-16 (specification

teaching that "how much advertisers are willing to pay for delivering ads" is used to derive

expected revenues and thus profits). In contrast, dependent claim 54 specifies that "the

condition" for display of an ad is "a specified time period," which of course does not relate to

the concept of expected profit. *Id.* cl. 54. Indeed, Houh points to this "time period" example in

another one of his flawed opinions. *See supra* § IV.F.

The Court should exclude Houh's ████████████████████████, and strike

paragraphs 51, 59, and 69 of his rebuttal report, because they present a belated claim

construction theory unsupported by the intrinsic record.

**G.    Houh's Purported Requirement that the "third party server computer controlling advertising space" of Claim Element 37(a) of the '139 Patent Must Be the Same for "each of a multitude of electronic visitors" Is Inconsistent with the Claim Language**

Houh also opines, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

PUBLIC VERSION

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████ Ex. 1 ¶203. It is unclear whether Houh believes that the third-party server

computer must be the same for all or just multiple electronic visitors. But in any event, he points

to nothing in the claim language supporting either interpretation. *Id.* Moreover, on its face, the

claim language is agnostic as to whether the third-party server computer controlling advertising

space is the same for all (or multiple) electronic visitors or not. Rather, all that claim requires is

that "indicia of a condition for display of an advertisement" is "direct[ed] to a third-party server

computer," and that such "directing" occurs "for each of a multitude of different electronic

visitors to a first media property." Ex. 5 cl. 37.

Houh's interpretation ███████████████████████████████

███████████████████████████████████████████ *Id.* 8:30-32

(internal citations omitted); *see also, e.g.*, *id.* 9:4-9. The specification further makes clear "a

media property (in the present context) can also be defined as any equipment [e.g., a server

computer] that controls an ad space viewed by a visitor." *Id.* 3:38-48. Thus, the specification

expressly teaches the invention can involve coordination with ***multiple*** server computers

controlling advertising space, and is not limited to a ***single*** server computer controlling

advertising space.

The Court should exclude Houh's ██████████████████████,

and strike paragraph 203 of his rebuttal report, because they present a belated claim construction

theory that is inconsistent with the claim language and specification.

## V.    THE COURT SHOULD STRIKE HOUH'S OPINIONS CONCERNING THE PREAMBLES OF THE ASSERTED CLAIMS, AS HE HAS NOT OPINED THEY ARE LIMITING, NOR HAS THE COURT FOUND THAT THEY ARE

The Court did not find that any of the preambles of the asserted claims serve as a claim

**PUBLIC VERSION**

limitation (Dkt. No. 113), and Houh does not otherwise offer any opinion that any of them do (*see* Ex. 1 ¶¶195-198, 237-239, 297, 298, 333, 334, 351). And at his deposition, Houh

████████████████████████████████████████████████████████ Ex. 2

70:6-73:11; Ex. 3 132:14-133:6, 196:17-197:3. But in his rebuttal report, Houh ██████████

████████████████████████████████████████████████████████

████████. Ex. 1 ¶¶195-198, 237-239, 297, 298, 333, 334, 351. As he explained at his deposition,

████████████████████████████████████████████████████████

████████████████████ Ex. 3 132:14-133:6; *see also id.* 196:17-197:3. Because neither

Amazon nor its experts have alleged that the preambles are limiting, the Court should strike

Houh's non-infringement arguments grounded in the preambles, including paragraphs 195-198,

237-239, 297, 298, 333, 334, and 351 of this rebuttal report, because these opinions are not

probative of any relevant issue in the case, and they serve no purpose other than to confuse the

jury and prejudice AlmondNet.

## VI.    THE COURT SHOULD STRIKE HOUH'S OPINIONS THAT RELY ON INFORMATION THAT AMAZON WITHHELD DURING FACT DISCOVERY

"If a party fails to provide information or identify a witness as required by Rule 26(a) or

(e), the party is not allowed to use that information or witness to supply evidence on a motion,

at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R.

Civ. P. 37(c). "In analyzing whether to strike the late-disclosed information and any expert

opinions that rely on it, [i]t is relevant for the court to consider: '(1) [the disclosing party's

explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the

potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a

continuance.'" *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-70, 2020 WL 4288356, at *2 (E.D. Tex.

July 27, 2020) (quoting *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 280 (5th Cir. 2009)). Amazon

**PUBLIC VERSION**

"bears the burden to prove its failure to comply with Rule 26 was 'substantially justified or harmless.'" *Id.* (quoting *Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013)).

During discovery, Amazon failed to provide any information concerning the corporate entities involved in the operation of the Accused Products. AlmondNet served a 30(b)(6) topic aimed at this information (Ex. 10, Ex. A at 5 (Topic No. 1)), and Amazon provided four witnesses designated on this topic. But none of them could answer questions concerning what corporate entities are involved in the operation of the Accused Products. For example, at his deposition, Mr. Ron Knapp testified as follows:



Ex. 11 212:24-213:11; *see also id.* 11:11-12:1. Other Amazon witnesses designated on Topic No. 1 testified similarly. Ex. 12 12:4-17, 113:2-8; Ex. 13 9:9-18, 177:7-179:5; Ex. 14 9:16-10:12, 139:18-140:6.

However, Houh stated the following facts in his rebuttal report:



**PUBLIC VERSION**

████████████████████████████████████████████████

██████

Ex. 1 ¶¶279, 280; *see also* Ex. 3 23:10-24:13 (████████████████████████████

██████). He then relies on these facts to allege the Accused Products do not meet elements of

numerous asserted claims, including claim elements 24(c) and (f) of the '639 patent, and claim

16 and claim elements 1(c), 11(c), and 11(f) of the '586 patent. *See id.* ¶¶264, 279, 280, 322,

323, 337, 340, 344, 345. Not only are these theories based on previously undisclosed facts, but

these theories were also not disclosed in Amazon's detailed non-infringement contentions for

these (or any) claim elements. Ex. 16 at 3-4; Ex. 17 at 3, 7-8, 10.

These portions of Houh's report should be stricken, and Amazon should not otherwise

be permitted to rely on these late-disclosed alleged facts at trial. Evaluating the factors set forth

in *Gree* and *CQ*, Amazon has not provided any explanation or justification for the late

disclosure. The late-disclosed facts are also important to the case, as they bear relevance to one

of the key issues in the case—infringement. It follows that the prejudice to AlmondNet is high,

as AlmondNet has not had a proper opportunity to explore these alleged facts with Amazon's

corporate representatives at deposition. A "continuance" is not a viable option, as this case is

just two months away from trial. Dkt. No. 120.

The Court should preclude Houh (and Amazon) from relying on the late-disclosed

"corporate entity" facts and associated theories, and strike paragraphs 264, 279, 280, 322, 323,

344, and 345 of his rebuttal report. *See, e.g.*, *Gree*, 2020 WL 4288356, at *2-3 (striking

information and expert reliance on facts disclosed for the first time in rebuttal expert reports).

In the alternative, if the Court does not grant this motion to strike, AlmondNet requests

the Court retroactively grant it leave to serve a supplemental infringement report from Koskinen

addressing this issue. In an effort to minimize the prejudice it suffered from Amazon's late

██████

## PUBLIC VERSION

disclosure and to reduce the risk of delay in this case coming to trial, on August 9 (nearly a week before Koskinen's deposition), AlmondNet served a short supplement from Koskinen addressing the issues raised by the late-disclosed facts. *See* Ex. 15 ¶¶18-25.

In exercising its discretion on whether to grant such leave, "courts typically consider (1) the explanation by the party who failed to comply with the scheduling order; (2) the prejudice to the party opposing the designation; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the witness's testimony." *Navico Inc. v. Garmin Int'l, Inc.*, No. 2:16-cv-190, 2017 WL 2868961, at *1 (E.D. Tex. July 4, 2017). Here, AlmondNet's expert could not have provided these opinions in his opening report because the "corporate entity" information had not yet been disclosed to AlmondNet. Amazon does not suffer any prejudice as a result of the short supplement, as Amazon received it nearly a week before Koskinen's deposition, well before the close of expert discovery, giving Amazon ample time to review the supplement and examine Koskinen concerning it. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-1047, 2016 WL 11750179, at *2-3 (E.D. Tex. Nov. 30, 2016) (granting leave to serve a revised expert report *after* the close of expert discovery to respond to a theory presented for the first time in a rebuttal report). Indeed, Houh reviewed the supplement before his own deposition and formed opinions on it. Ex. 3 15:11-21. And as discussed above, Koskinen's testimony on this issue is important because it bears relevance to one of the key issues in the case—infringement. AlmondNet thus asks the court to grant it leave to serve Koskinen's supplemental report, in the event that the Court does not strike Houh's opinions based on the late-disclosed information.

## VII.    THE COURT SHOULD EXCLUDE UNDER *DAUBERT* OR STRIKE HOUH'S OPINIONS BASED ON BALD ASSERTIONS UNSUPPORTED BY ANY EVIDENCE OR REASONING

Houh opines, without any reasoning or evidentiary support, as follows:

**PUBLIC VERSION**



Ex. 1 ¶209 (emphasis in original); *see id.* ¶218; *see also id.* ¶123. Houh appears to take the

position ███████████████████████████████ within the meaning of claim

elements 37(b) and 37(c) of the '139 patent. But, critically, Houh fails to explain *why* that is the

case in his report. Houh also █████████████████████████████

██████████████████████████████ Ex. 3 186:9-195:2; *see also id.*

46:9-51:3, 53:5-54:10, 55:8-17, 117:9-118:17. Amazon also did not present these arguments for

these (or any) claim elements in its non-infringement contentions. Ex. 18 at 3-4.

In addition, Houh offered similar conclusory opinions concerning the "first Internet site"

limitation of claim elements 24(b) and 24(c) of the '639 patent and claim elements 1(c), 11(b),

and 11(c) of the '586 patent. Ex. 1 ¶¶249, 262, 308, 336, 337; *see also id.* ¶123. Houh likewise

███████████████████████████ within the meaning of these claims in his

report. And when questioned about this opinion at his deposition, ████████████████

███████████████████████ Ex. 3 46:9-51:3, 53:5-54:10, 55:8-17, 105:19-

113:24, 117:9-118:17. In addition, Amazon likewise did not present these arguments for these

(or any) claim elements in its non-infringement contentions. Ex. 16 at 2-4; Ex. 17 at 3, 6-8.

Dr. Houh's ██████████████████████████ requires exclusion

under Rule 702 and *Daubert. See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 4th

1339, 1356-58 (Fed. Cir. 2002) (excluding as unreliable under *Daubert* portions of an expert

report that offered nothing more than unsupported and conclusory opinions); *cf. Kim v.*

*ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming grant of JMOL where

**PUBLIC VERSION**

"conclusory [expert] testimony" was the basis for the jury verdict). In addition, without knowing *why* Houh ███████████████████████████████████████ AlmondNet cannot address these theories at trial in its affirmative case (or really at all, as AlmondNet understands the Court does not typically permit an infringement expert to offer "reply" testimony to a non-infringement expert's rebuttal). Such "sandbagging" brings undue prejudice to AlmondNet.

For these reasons, the Court should preclude Houh from relying on ███████████ ██████████, and strike paragraphs 123, 209, 218, 249, 262, and 308 of his rebuttal report.

In the alternative, if the Court does not grant this motion to exclude and strike, AlmondNet requests the Court retroactively grant it leave to serve a supplemental infringement report from Koskinen rebutting Houh's opinion ████████████████████████ ███████████████████████. *See* Ex. 15 ¶¶12-17. The Court should grant leave for this supplementation for the same reasons as discussed above. *See supra* § VI. In summary, Koskinen could not have provided █████████████████ in his opening report because neither he nor AlmondNet could have anticipated that Amazon's expert would raise this issue on rebuttal, particularly given the contents of Amazon's non-infringement contentions. *See* Ex. 16 at 2-4 (███████████████████); Ex. 17 at 3, 6-8 (same). Amazon does not suffer any prejudice because it received the supplement well in advance of Koskinen's deposition, and Houh had a chance to review it and form opinions on it. Ex. 3 15:11-21, 105:19-113:24. And as with the issue discussed above in Section VI, Koskinen's testimony on this issue is importance because it also bears relevance to one of the key issues in the case—infringement. AlmondNet thus asks the court to grant it leave to serve Koskinen's supplemental report, in the event that the Court does not exclude and strike Houh's ██████████████████████

# PUBLIC VERSION

Date: August 23, 2023

Respectfully submitted,

By: */s/ Amy E. Hayden*

Reza Mirzaie
Marc A. Fenster
Benjamin T. Wang
Adam Hoffman
James A. Milkey
Amy E. Hayden
James S. Tsuei
Jonathan Ma
Daniel B. Kolko
Jason M. Wietholter
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bwang@raklaw.com
ahoffman@raklaw.com
jmilkey@raklaw.com
ahayden@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
dkolko@raklaw.com
jwietholter@raklaw.com

*Counsel for Plaintiff ALMONDNET, INC.*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 23, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Amy E. Hayden*
Amy E. Hayden
