# Exhibit G-2

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ALMONDNET, INC.,<br><br>              Plaintiff,<br><br>       v.<br><br>AMAZON.COM, INC., AMAZON.COM<br>SERVICES LLC, and AMAZON WEB<br>SERVICES, INC.,<br><br>              Defendants. | Civil Action No. 6:21-cv-00898-ADA<br><br>**JURY TRIAL DEMANDED** |

**<u>PRELIMINARY JURY INSTRUCTIONS</u>**

**JURY INSTRUCTION NO. 1: INSTRUCTIONS FOR BEGINNING OF TRIAL**

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case.

Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

**JURY INSTRUCTION NO. 2: PRELIMINARY INSTRUCTIONS TO JURY**

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your notetaking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, TikTok, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. So do not think they are being impolite.  They are simply following my instructions.  And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.  And by that, I mean you are free to talk about the Dallas Cowboys, the weather, or other related matters because you're going to be spending a fair amount of time together this week.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

**JURY INSTRUCTION NO. 3: COURTROOM PROCEDURE (ATTORNEY SIDEBAR)**

There are some issues of law or procedure that I must decide or that the attorneys and I might have to discuss. These issues are not part of what you must decide, and they are dealt with outside your presence.

To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what they are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

**JURY INSTRUCTION NO. 4: SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Plaintiff AlmondNet, Inc. and Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. ("Amazon"). The case involves United States Patent Nos. 8,671,139 and 7,822,639. For your convenience, the parties and I will often refer to these patents by the last three numbers of the patent number, namely, as the "'139 Patent," the "'639 Patent," or the "Asserted Patents."

AlmondNet filed suit in this court seeking money damages from Amazon for allegedly infringing the Asserted Patents by making, using, selling, and/or offering for sale within the United States products that AlmondNet argues are covered by claim(s) 37, 42, 43, and 45 of the '139 patent, and claim(s) 24, 29, 31, and 32 of the '639 patent. These are known as the "Asserted Claims."

The products AlmondNet accuses of infringing the asserted patents are: the Amazon Demand Side Platform and Sponsored Display. These may be referred to as the "Accused Products."

Amazon denies that it has infringed any of the Asserted Claims of the Asserted Patents and that AlmondNet is entitled to any damages. Amazon also contends that the Asserted Claims are invalid.

Later, after evidence is done, I will instruct you on how a patent might be deemed to be invalid. That's a decision you will make.

Your job will be to decide whether or not any Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any Asserted Claims both have been infringed and are valid, you will then need to decide **[whether or not]** any money damages **[should] [to]** be awarded to AlmondNet to compensate it for the infringement. In no event may the damages award be less than what AlmondNet would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate AlmondNet and not to punish Amazon. You may not include in your award any additional amount as a fine or penalty in order to punish Amazon. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

I will now instruct the court security officer to pass out your juror notebooks. I ask that you write your name on your notebook. It is important that we not get them confused. As you leave to take a break or at the end of the day, please leave your notebook in the jury room. I ask you to do that because I do not want anyone losing their notebook. Inside, you will find paper, a glossary of patent terms, copies of the three asserted patents, and photographs of each witness.

These materials have been jointly submitted by the parties.  If you have not done so already, please ensure that you have written your name on your jury notebook.

**JURY INSTRUCTION NO. 5: [**WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for 20 years from the application filing date to prevent others from making, using, offering to sell, or selling the patented invention within the United States without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for

9

some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."]

[PATENT SYSTEM OVERVIEW (PATENT VIDEO)

Patents in the United States are granted by the United States Patent and Trademark Office. You might hear it referred to during trial as the Patent Office, PTO, or USPTO.  After I read these preliminary instructions, you'll return to the jury assembly room and you'll watch about a 17-minute video on patent law and more information about patent cases.]

**JURY INSTRUCTION NO. 6: PATENT LITIGATION**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims of the patent, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, just like this one, in an effort to stop the alleged infringing acts or to recover damages, generally meaning money paid by the infringer to the patent owner to compensate for harm caused by the alleged infringement.

The patent owner must prove infringement of at least one claim of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

It is ultimately up to you and exclusively up to you to decide based on the law the factual question of whether the patent owner, in this case the plaintiff, has proven infringement of any valid patent claim.

A party accused of infringing a patent may deny infringement, and/or prove that the asserted claims of the patent are invalid. Invalidity is a defense to patent infringement. A patent when issued is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid. That the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding patent prosecution in the PTO takes place without any input from those who are later alleged to have infringed the patent.

**[JURY INSTRUCTION NO. 7: PATENTS AT ISSUE**

**I have already determined the meaning of the claims of the Asserted Patents known as the Court's Claim Constructions. You can find those definitions in the juror notebooks I have given you. For a claim term for which I have not provided you with a definition, you should apply the plain and ordinary meaning of that term in the field of the patent in light of the specification and prosecution history as understood by a person of ordinary skill in the art. You are to apply the definitions of the terms I construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.]**

**JURY INSTRUCTION NO. 8: BURDENS OF PROOF**

In any legal action, facts must be proved by a required amount of evidence known as the burden of proof.  The burden of proof in this case is on AlmondNet for some issues and on Amazon for other issues.

There are two burdens of proof that you will apply in this case.  One is the preponderance of evidence, and the other is clear and convincing evidence.

The burden of proof applicable to AlmondNet in this case is known as the preponderance of evidence.  AlmondNet has the burden of proving its patent infringement case by a preponderance of the evidence.  AlmondNet also has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely so than not so.  For example, evidence that persuades you that a claim is more likely true than not true.  You may think of this preponderance of the evidence as slightly greater than 50 percent.

Defendants have the burden of proving patent invalidity by clear and convincing evidence.  Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  It is evidence so clear, direct, weighty, and convincing as to enable you to come to a clear conviction without hesitancy.

This is different from the criminal law standard of beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence, where the proof only need to be sufficient to tip the scales in favor of the party proving the fact, to the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of the clear and convincing evidence standard as being between those two standards.

**JURY INSTRUCTION NO. 9: OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Amazon has infringed the Asserted Claims of the Asserted Patents. A patent claim is infringed only if an accused product or method includes or performs each and every element or step in that patent claim.  If the accused product does not contain one or more elements or does not perform one or more steps in that claim, Amazon does not infringe that claim.  You must determine infringement with respect to each patent claim individually.  I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the Asserted Claims of the Asserted Patents are invalid, as Amazon contends.

An issued United States patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. In order to overcome this presumption, a person accused of infringement must establish by clear and convincing evidence that the claim is invalid.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.  In addition, there is the possibility that mistakes were made or that information was overlooked.  Examiners have a lot of work to do and no process is perfect.  Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent.

A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. Even though one or more Patent Office examiners have allowed the asserted claims as valid, it is your job to consider the evidence presented by the parties and determine independently whether or not Amazon has proven that the patent is invalid.

Amazon denies that it is infringing the claims of the asserted patents and contends that the asserted claims are invalid.  Invalidity of the asserted patent claims is a defense to infringement.  Therefore, even though the Patent Examiner has allowed each of the asserted claims, it will be up to you, the jury, to decide whether the asserted claims are valid.

A patent claim may be invalid for a number of reasons. One, it claims subject matter that is not new or obvious. For a claim to be invalid because it is not new, Amazon must show that all of the

elements of a claim are present in a single previous device or method or sufficiently described in a single previously printed publication or patent. Again, we call this prior art. If a claim is not new, then the legal term for that is that it is anticipated.

Another way that a claim may be invalid is that it would have been called obvious. Even though every element of a claim is not shown or sufficiently described within a single piece of prior art, which is what I just described, the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in determining and deciding whether or not the inventions claimed in the two asserted patents are, in fact, obvious.

**[Another way that a claim may be invalid is that it is directed to ineligible subject matter. To succeed in this claim for invalidity, Amazon must show that the elements of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well understood, routine and conventional as of the date of the invention.]**

A patent may also be invalid if its description in the specification does not meet certain legal requirements. To be valid, a patent must contain a written description, which is known as the written description requirement. To meet this requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as claimed in the issued patent.

The disclosure of a patent must also meet the enablement requirement. The first was a written description requirement. I'm now about to talk about the enablement requirement. To meet the enablement requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention without undue experimentation, again, at the time the patent application was originally filed.

If you decide that any of the Asserted Claims of the Asserted Patents has been infringed and is not invalid as anticipated, obvious, or not meeting the written description or enablement requirements, you will then need to decide any money damages to be awarded to AlmondNet to compensate it for the infringement.

**[Amazon also contends that the Asserted Patents fail to claim patent-eligible subject matter. To succeed on its claim that the Asserted Patents fail to claim patent-eligible subject matter, Amazon must show that the elements of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well understood, routine and conventional as of the date of the invention. You will be asked to determine whether Amazon has made that showing.]**

16

**JURY INSTRUCTION NO. 10: EVIDENCE**

The evidence you will hear consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you will hear in this case, whether direct, circumstantial, or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you will receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

**JURY INSTRUCTION NO. 11: STIPULATIONS OF FACT**

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**[JURY INSTRUCTION NO. 12: CHARTS, SUMMARIES, AND CALCULATIONS**
**Certain summaries, charts, or calculations may be entered into evidence to prove the content**
**of voluminous books, records, and other documents which cannot be conveniently examined**
**here in court. These charts, summaries, and calculations are evidence.]**

**JURY INSTRUCTION NO. 13: DEMONSTRATIVES**

Certain materials that may be shown to you, including PowerPoint presentations, posters, models or videos of how the technology works, are illustrations of evidence, but are not themselves evidence.  It is a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from the materials you saw, rely on your recollection.

**JURY INSTRUCTION NO. 14: BIAS—CORPORATE PARTY**

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 15: WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

In determining the weight to give to the testimony of a witness, consider whether there was evidence at some other time that the witness said or did something or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. We are people. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or just a mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**JURY INSTRUCTION NO. 16: EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 17: DEPOSITION TESTIMONY**

Certain testimony may be presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers may be shown to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 18: OBJECTIONS**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer these questions. You should not be influenced by the objection or by the Court's ruling on it.

**JURY INSTRUCTION NO. 19: OUTLINE OF TRIAL**

The trial will begin shortly. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

Immediately following the opening statements, AlmondNet will present its evidence in support of its contention that the Asserted Claims of the Asserted Patents have been infringed by Amazon and that the infringement has been willful. To prove infringement of any claim, AlmondNet must persuade you by a preponderance of the evidence that Amazon has infringed that claim. **[To persuade you that any infringement was willful, AlmondNet must prove by a preponderance of the evidence that the infringement was willful.]** Because AlmondNet is the plaintiff, it will go first.

Amazon will then present its evidence that the Asserted Claims of the Asserted Patents are invalid. To prove invalidity of any claim, Amazon must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, Amazon will put on evidence responding to AlmondNet's evidence of infringement **[and willfulness]**.

AlmondNet may then put on additional evidence responding to Amazon's evidence that the Asserted Claims of the Asserted Patents are invalid. This is referred to as "rebuttal" evidence. AlmondNet's "rebuttal" evidence may respond to the evidence offered by Amazon.

During the trial, both parties will also present evidence related to the issue of damages, or the amount of money **[, if any,]** AlmondNet should receive if you determine that a claim has been infringed and is not invalid.

AlmondNet has the burden of proving the amount of its damages by a preponderance of the evidence. Amazon will have the opportunity to present evidence that contests AlmondNet's proposed amount of damages, but in presenting this evidence Amazon is not agreeing that AlmondNet is entitled to any damages. I will give you more detailed instructions about damages later.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, I will release you and you will begin your deliberations.

Dated:  November 17, 2023

By:  /s/ Amy E. Hayden

Reza Mirzaie
rmirzaie@raklaw.com
Adam Hoffman
ahoffman@raklaw.com
Marc A. Fenster
mafenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
James A. Milkey
jmilkey@raklaw.com
Amy E. Hayden
ahayden@raklaw.com
James S. Tsuei
jtsuei@raklaw.com
Daniel B. Kolko
dkolko@raklaw.com
Jason M. Wietholter
jwietholter@raklaw.com

RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

*Attorneys for Plaintiff AlmondNet, Inc.*

Respectfully submitted,

By:  /s/ Eric B. Young

J. David Hadden (CA Bar No. 176148)
Email: dhadden@fenwick.com
Saina S. Shamilov (CA Bar No. 215636)
Email: sshamilov@fenwick.com
Ravi R. Ranganath (CA Bar No. 272981)
Email: rranganath@fenwick.com
Johnson K. Kuncheria (TX Bar No. 24070092)
Email: jkuncheria@fenwick.com
Johnathan L. Chai (CA Bar No. 339315)
Email: jchai@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500
Fax: (650) 938-5200

Todd R. Gregorian (CA Bar No. 236096)
Email: tgregorian@fenwick.com
Eric B. Young, (CA Bar No. 318754)
Email: eyoung@fenwick.com
Dargaye Churnet (*Admitted Pro Hac Vice*)
Email: dchurnet@fenwick.com
Christopher L. Larson (CA Bar No. 308247)
Email: clarson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

Jeffrey A. Ware (WA Bar No. 43779)
Email: jware@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
Tel: (206) 389-4510

James S. Trainor (*Admitted Pro Hac Vice*)
Email: jtrainor@fenwick.com
Jessica Lin (NY Bar No. 5035860)
Email: jessica.lin@fenwick.com
Eric Menist (NY Bar No. 5721568)
Email: emenist@fenwick.com

FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY 10010
Tel: (212) 921-2001

*Of Counsel*:

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

*Counsel for Defendants*
AMAZON.COM, INC., AMAZON.COM SERVICES
LLC, and AMAZON WEB SERVICES, INC.

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

ALMONDNET, INC.,

               Plaintiff,

     v.

AMAZON.COM, INC., AMAZON.COM
SERVICES LLC, and AMAZON WEB
SERVICES, INC.,

             Defendants.

Civil Action No. 6:21-cv-00898-ADA

**JURY TRIAL DEMANDED**

## JURY CHARGE
## TO BE GIVEN AFTER THE CLOSE OF EVIDENCE

**JURY INSTRUCTION NO. 20: JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for AlmondNet or Amazon in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the

verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result.

Again, your answers and your verdict must be unanimous.

**JURY INSTRUCTION NO. 21:  SUMMARY OF PATENT ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following four main issues:

1.    Whether AlmondNet has proven that Amazon infringed claim(s) 37, 42, 43, or 45, of the '139 patent, or claim(s) 24, 29, 31, or 32 of the '639 patent;

2.    Whether AlmondNet has proven that Amazon's infringement is willful.

3.    Whether Amazon has proven any patent claim is invalid; and

4.    If any claim or claims of any patent are infringed and not invalid, what amount of damages**[, if any,]** AlmondNet has proven.

**JURY INSTRUCTION NO. 22: EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

**JURY INSTRUCTION NO. 23: WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

In determining the weight to give to the testimony of a witness, consider whether there was evidence at some other time the witness said or did something or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. We are people. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or just a mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**JURY INSTRUCTION NO. 24: DEPOSITION TESTIMONY**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you by video. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 25: EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 26: NO INFERENCE FROM FILING SUIT**

The fact that AlmondNet brought a lawsuit and is in court seeking damages creates no inference that AlmondNet is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**JURY INSTRUCTION NO. 27: STIPULATIONS OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 28: LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**[JURY INSTRUCTION NO. 29: CHARTS, SUMMARIES, AND CALCULATIONS**

**Certain summaries, charts, or calculations may be entered into evidence to prove the content of voluminous books, records, and other documents which cannot be conveniently examined here in court. These charts, summaries, and calculations are evidence.]**

**JURY INSTRUCTION NO. 30: DEMONSTRATIVES**

Certain materials shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. It is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the materials you saw, rely on your recollection.

**JURY INSTRUCTION NO. 31: BIAS – CORPORATE PARTY INVOLVED**

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**JURY INSTRUCTION NO. 32: BURDEN OF PROOF GENERALLY**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on AlmondNet for some issues and on Amazon for other issues. There are two burdens of proof that you will apply in this case. One is the preponderance of the evidence, and the other is clear and convincing evidence.

**JURY INSTRUCTION NO. 33: PREPONDERANCE OF THE EVIDENCE**

The burden of proof applicable to AlmondNet in this case is known as the preponderance of evidence. AlmondNet has the burden of proving its patent infringement case by a preponderance of the evidence. AlmondNet also has the burden of proving damages for any alleged patent infringement by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely so than not so. For example, evidence that persuades you that a claim is more likely true than not true. You may think of this preponderance of the evidence as slightly greater than 50 percent.

If you find that AlmondNet has failed to prove any element of a specific claim by a preponderance of the evidence, then it may not recover on that specific claim.

**JURY INSTRUCTION NO. 34: CLEAR AND CONVINCING EVIDENCE**

Amazon has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. It is evidence so clear, direct, weighty, and convincing as to enable you to come to a clear conviction without hesitancy.

This is different from the criminal law standard of beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence, where the proof only need to be sufficient to tip the scales in favor of the party proving the fact, to the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of the clear and convincing evidence standard as being between those two standards.

**[JURY INSTRUCTION NO. 35: SUMMARY OF CONTENTIONS**

**As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.**

**As I previously told you, AlmondNet filed suit in this court seeking money damages from Amazon for allegedly infringing the Asserted Patents by making, using, selling, and/or offering for sale within the United States products that AlmondNet argues are covered by claim(s) 37, 42, 43, and 45 of the '139 patent, and claim(s) 24, 29, 31, and 32 of the '639 patent. These are known as the "Asserted Claims."**

**The products that are alleged to infringe are two advertising services made, used, offered for sale, or sold by Amazon—Amazon Demand Side Platform and Sponsored Display. These may be referred to as the "Accused Products."**

**Amazon denies that it has infringed any of the Asserted Claims of the Asserted Patents and that AlmondNet is entitled to any damages. Amazon also contends that the Asserted Claims are invalid. Amazon also argues that the Asserted Claims are invalid.**

**Your job is to decide whether or not Amazon has infringed any Asserted Claims, and whether or not those claims are invalid. If you decide that any Asserted Claims both have been infringed and are valid, you will then need to decide any money damages to be awarded to AlmondNet to compensate it for the infringement.]**

**JURY INSTRUCTION NO. 36: PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims define a patent owner's rights under the law.  The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth—in words—a set of requirements. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim by claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.  If a system or method is missing even one limitation or element of a claim, the system or method is not covered by that claim.

[The steps of a process covered by a claim do not need to be performed in any particular sequence. In other words, even though the steps are listed one by one in a patent claim, you should ignore that apparent sequencing in evaluating AlmondNet's arguments that those claims are infringed and Amazon's arguments that the claims are invalid.]

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

**JURY INSTRUCTION NO. 37: INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case the following claims are independent claims:

- Claim 37 of the '139 Patent; and

- Claim 24 of the '639 Patent.

The remainder of the Asserted Claims in the Asserted Patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. **[A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.**

**If any requirement of a dependent claim is not met, or if any requirement of a claim from which the dependent claim depends is not met, then the product is not covered by that dependent claim.]**

**JURY INSTRUCTION NO. 38: CLAIM INTERPRETATION**

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

[The beginning portion of a claim, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

The preambles of the asserted claims do not limit the scope of the claims. Instead, they merely state an intended purpose of the claimed invention. In other words, even if the preambles appear to contain requirements that define the invention, you should ignore such apparent requirements in evaluating AlmondNet's arguments that those claims are infringed and Amazon's arguments that the claims are invalid.]

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent in light of the specification and prosecution history as understood by a person of ordinary skill in the art. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

My claim constructions are as follows:

| Claim Term | Construction |
| --- | --- |
| "second Internet site" / "second, different Internet site" | "Internet site operated for the benefit of a different (and not commonly owned) entity than an entity for which the first Internet site is operated for the benefit of" |

**JURY INSTRUCTION NO. 39: INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not AlmondNet has proven that Amazon has infringed the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

Patent law gives the owner of a valid patent the right to stop others from importing, making, using, selling, offering to sell, or selling the products and methods that infringe within the United States during the term of the patent.  Any person or entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

**[In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused system or process, and determine whether or not there is infringement. You should not compare the accused system or process with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is with the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.]**

I will now explain direct infringement, the type of infringement alleged in this case, in more detail.

**JURY INSTRUCTION NO. 40: DIRECT INFRINGEMENT**

To prove direct infringement of a patent claim, AlmondNet must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Defendants made, used, sold, offered for sale within, or imported into the United States a product or process that meets all of the requirements a claim and did so without AlmondNet's permission. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. A claim element is present if it exists in the accused product or was performed by the accused method as it is described in the claim language. If the accused product or process does not contain one or more elements or steps recited in a claim, there is no infringement.

**[A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. There is no intent element to direct infringement. Evidence of independent development is not relevant to an infringement determination. Copying is not a required element of infringement. Even if the party independently creates the accused product or method, it can still infringe.]**

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the additional requirements of any claims that depend from the independent claim were met to determine whether the dependent claims have also been infringed. Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

**JURY INSTRUCTION NO. 41: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If a company makes, uses, sells, or offers to sell within the United States a product or method that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or method satisfies the claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, a product or method infringes a claim if they contain elements that literally meet or are equivalent to each and every element of the claim. You may find that an element is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," AlmondNet must prove the equivalency of the structure to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused product or method either literally or under the doctrine of equivalents for you to find infringement.

**JURY INSTRUCTION NO. 42: WILLFUL INFRINGEMENT**

Willfulness requires you to determine whether AlmondNet proved that it is more likely than not that Amazon knew of the asserted patents and that the infringement by Amazon was intentional. You may not determine that the infringement was willful just because Amazon was aware of the asserted patents and infringed them. Instead, you must also find that Amazon deliberately infringed the asserted patents.

To determine whether Amazon acted willfully, consider all facts and assess Amazon's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to: (1) whether or not Amazon acted consistently with the standards of behavior for its industry; (2) whether or not Amazon intentionally copied a product of AlmondNet that is covered by these patents; (3) whether or not Amazon reasonably believed it did not infringe or that the patent was invalid; (4) whether or not Amazon made a good-faith effort to avoid infringing these patents, for example, whether Amazon attempted to design around these patents; and (5) whether or not Amazon tried to cover up its infringement.

**[An infringer may be found liable for willful infringement even if it did not have actual knowledge of the patent or infringement if the infringer intentionally took steps to remain unaware of the patent or infringement. This is known as willful blindness. Willful blindness is a factor to consider with respect to willfulness. An infringer may be found liable for willful infringement only if it had actual knowledge of the patent or deliberately infringed the patent or deliberately acted despite a risk of infringement that was so obvious it should have been known.]**

## JURY INSTRUCTION NO. 43: INVALIDITY GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Amazon has proven that the Asserted Claims of the Asserted Patents are invalid. To prove that any claim of a patent is invalid, Amazon must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

An issued United States patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. In order to overcome this presumption, Amazon must establish by clear and convincing evidence that the claim is invalid.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.  In addition, there is the possibility that mistakes were made or that information was overlooked.  Examiners have a lot of work to do and no process is perfect.  Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent.

A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.  Even though one or more Patent Office examiners have allowed the asserted claims as valid, it is your job to consider the evidence presented by the parties and determine independently whether or not Amazon has proven that the patent is invalid.

Evidence of prior art which was not reviewed by the Patent Office may be more probative of meeting this standard, than prior art which was reviewed by the patent office.

I will now explain to you Amazon's grounds for invalidity of the asserted claims.  In making your determination as to invalidity, you should consider each claim separately.

**JURY INSTRUCTION NO. 44: PRIOR ART**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims are obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

For the '639 and '139 patents, Amazon contends the following is prior art:

- The "DoubleClick" System

- The "Engage" System

- "Advertising on the Internet" by Robbin Zeff and Brad Aronson, which you heard referred to as "Zeff 99"

Amazon also contends that U.S. Patent Application Publication No. 2006/0173743 to Bollay is prior art to the '139 Patent.

For each prior art reference Amazon contends for the '639 patent, Amazon contends that it is prior art because it was patented, described in a printed publication, in public use, on sale, invented, or otherwise available to the public before November 28, 2000. For each prior art reference Amazon contends for the '139 patent, Amazon contends that it is prior art because it was patented, described in a printed publication, in public use, on sale, invented, or otherwise available to the public before June 16, 2006.

An invention is known when the information about it was reasonably accessible to the public on that date. An invention was publicly used when it was accessible to the public or commercially exploited.

**[It is Amazon's burden to establish by clear and convincing evidence that these alleged references qualify as prior art. Based on that standard you must decide whether those items are prior art, before considering them as prior art.]**

**JURY INSTRUCTION NO. 45: OBVIOUSNESS**

Amazon contends that the asserted claims of the asserted patents are invalid for being obvious in view of the prior art.  Obviousness is determined on a claim-by-claim basis.

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the alleged invention was made.

Amazon may establish a patent claim is invalid by proving that the claimed invention would have been obvious to persons having ordinary skill in the art at the time of the invention in the field of the invention.

Amazon bears the burden of establishing obviousness by clear and convincing evidence.   In determining whether a claimed invention is obvious, you must consider:

1. the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made;

2. the scope and content of the prior art;

3. any differences between the prior art and the claimed invention; and,

4. if present, so-called objective evidence or secondary considerations, which I will describe shortly.

Do not use hindsight; consider only what was known at the time of the invention.

The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find that the prior art rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

1. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. Whether the claimed invention satisfied a long-felt need;

3. Whether others had tried and failed to make the claimed invention;

4. Whether others invented the claimed invention at roughly the same time;

5. Whether others copied the claimed invention;

6. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

7. Whether the claimed invention achieved unexpected results;

8. Whether others in the field praised the claimed invention;

9. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

10. Whether others sought or obtained rights to the patent from the patent holder; and

11. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each Asserted Claim of each Asserted Patent separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**JURY INSTRUCTION NO. 46: LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

**[JURY INSTRUCTION NO. 47: INVALIDITY—ENABLEMENT**

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. Defendants contend that the asserted claims are invalid because the specification does not "enable" the full scope of the claimed invention. To succeed, Defendants must show by clear and convincing evidence that the patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of November 28, 2000 for the '639 Patent and as of June 16, 2006 for the '139 Patent. If a patent claim is not enabled, it is invalid.

**[In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the art.  Thus, a patent need not expressly state information that persons of ordinary skill in the art would be likely to know or could obtain.  The fact that some experimentation may be required for a person of ordinary skill in the art to practice the claimed invention does not mean that a patent does not meet the enablement requirement.]**

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1.  The time and cost of any necessary experimentation;

2.  How routine any necessary experimentation is in the field of technology of the patent;

3.  Whether the patent discloses specific working examples of the claimed invention;

4.  The amount of guidance presented in the patent;

5.  The nature and predictability of the field of technology of the patent;

6.  The level of ordinary skill in the art; and

7.  The nature and scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required (if any) is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether in the context of this invention and the state of the art at the time of its effective filing date, a person having

ordinary skill in the art would need to unduly experiment to make and use the full scope of the claimed invention.

**JURY INSTRUCTION NO. 48: INVALIDITY—WRITTEN DESCRIPTION**

The patent law contains certain requirements for the part of the patent called the specification.  The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's effective filing date.  Amazon contends that the asserted claims are invalid because the specification does not contain an adequate written description of the invention.  To succeed, Amazon must show by clear and convincing evidence that a person of ordinary skill in the field as of the filing date of the patent, reading the specification, would not understand that (a) it describes the full scope of the invention as it is finally claimed in the Asserted Claims of the Asserted Patents and (b) the named inventors were in full scope of the claimed invention.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.  The specification must describe the full scope of the claimed invention, including each element thereof**[, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses]**. Your assessment regarding written description is limited to the "four corners" of the specification.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

**JURY INSTRUCTION NO. 49: PATENT ELIGIBILITY**

Amazon must show by clear and convincing evidence that the elements of the asserted claims, when taken individually and when taken as an ordered combination, involve only activities or technology, if any, which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the effective filing date.

**[The fact that a claim is directed to a new idea is not sufficient to make that claim patent-eligible based on the ordered combination of elements. Instead, the specific combination and ordering of the claim elements must provide a particular solution to an identified problem in the prior art.]**

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional. At the same time, the specification of the asserted patents may be such evidence, if you find that the specification shows that the elements of the asserted claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional.

**JURY INSTRUCTION NO. 50: DAMAGES—INTRODUCTION**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Amazon infringed any Asserted Claim of the Asserted Patents, and you do not find that that same claim is invalid, you must then consider what amount of damages to award to AlmondNet. If you find that Amazon has not infringed any valid claim of any patent, then AlmondNet is not entitled to any damages.

If you award damages, they must be adequate to compensate AlmondNet for any infringement you find. They are not meant to punish an infringer. Your damages award, if you reach this issue, should not be less that what the patent holder would have received had it been paid a reasonable royalty.  You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate the patent holder for any infringement.

AlmondNet has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that AlmondNet establishes are more likely than not. While AlmondNet is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, AlmondNet seeks what it contends is a reasonable royalty. You must be careful to ensure that award is no more and no less than the value of the patented invention.

**[The court expresses no opinion on whether AlmondNet is entitled or not entitled to any damages.]**

**JURY INSTRUCTION NO. 51: REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. Here, the Parties agree that the hypothetical negotiation would have taken place in August 2012.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty  to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

**JURY INSTRUCTION NO. 52: REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

(1)     The royalties received by the patentee for the licensing of the Asserted Patents, proving or tending to prove an established royalty

(2)     The rates paid by the licensee for the use of other patents comparable to the Asserted Patents.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the Asserted Patents and the term of the license.

(8)     The established profitability of the product made under the Asserted Patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)     The extent to which Amazon has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as Amazon) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**JURY INSTRUCTION NO. 53: DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

[JURY INSTRUCTION NO. 54: DAMAGES – LUMP SUM

Reasonable royalty awards may take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.]

**JURY INSTRUCTION NO. 55: DAMAGES – DAMAGES PERIOD**

The period between when the damages began and when damages ended or will end is referred to as the "damages period." Here, the Parties agree that following date ranges apply:

- July 24, 2019 to June 14, 2027 for the '139 Patent

- August 27, 2015 to April 10, 2023 for the '639 Patent

**JURY INSTRUCTION NO. 56: DAMAGES - APPORTIONMENT**

Any amount you find as of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Amazon's size or market position. A royalty compensating AlmondNet for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features and aspects of the product is called apportionment.

Apportionment can be addressed in a variety of ways, including by careful selection of the royalty base to reflect the value added by the patented feature or by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.

When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

[If you decide AlmondNet is entitled to a reasonable royalty, you must account for the relative value of the new and inventive elements of AlmondNet's invention in comparison to the conventional elements. In other words, you may reward AlmondNet only for its innovation: the incremental benefit bestowed by only the non-conventional or new elements of a patent claim, taken as a whole.]

**JURY INSTRUCTION NO. 57: DUTY TO DELIBERATE**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer the questions in the verdict form according to the instructions in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 58: SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Snapchat, Instagram, WhatsApp or Twitter or any other way to communicate. You may not communicate to anyone any information about this case or conduct any research about this case until this case is over and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

Dated:  November 17, 2023

Respectfully submitted,

By: _/s/ Amy E. Hayden_

By: _/s/ Eric B. Young_

Reza Mirzaie
rmirzaie@raklaw.com
Adam Hoffman
ahoffman@raklaw.com
Marc A. Fenster
mafenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
James A. Milkey
jmilkey@raklaw.com
Amy E. Hayden
ahayden@raklaw.com
James S. Tsuei
jtsuei@raklaw.com
Daniel B. Kolko
dkolko@raklaw.com
Jason M. Wietholter
jwietholter@raklaw.com

RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

_Attorneys for Plaintiff AlmondNet, Inc._

J. David Hadden (CA Bar No. 176148)
Email: dhadden@fenwick.com
Saina S. Shamilov (CA Bar No. 215636)
Email: sshamilov@fenwick.com
Ravi R. Ranganath (CA Bar No. 272981)
Email: rranganath@fenwick.com
Johnson K. Kuncheria (TX Bar No. 24070092)
Email: jkuncheria@fenwick.com
Johnathan L. Chai (CA Bar No. 339315)
Email: jchai@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500
Fax: (650) 938-5200

Todd R. Gregorian (CA Bar No. 236096)
Email: tgregorian@fenwick.com
Eric B. Young, (CA Bar No. 318754)
Email: eyoung@fenwick.com
Dargaye Churnet (_Admitted Pro Hac Vice_)
Email: dchurnet@fenwick.com
Christopher L. Larson (CA Bar No. 308247)
Email: clarson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

Jeffrey A. Ware (WA Bar No. 43779)
Email: jware@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
Tel: (206) 389-4510

James S. Trainor (_Admitted Pro Hac Vice_)
Email: jtrainor@fenwick.com
Jessica Lin (NY Bar No. 5035860)
Email: jessica.lin@fenwick.com
Eric Menist (NY Bar No. 5721568)
Email: emenist@fenwick.com

FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY 10010
Tel: (212) 921-2001

*Of Counsel*:

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

*Counsel for Defendants*
AMAZON.COM, INC., AMAZON.COM SERVICES
LLC, and AMAZON WEB SERVICES, INC.